UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARQUELIA VEGA,<br><br>                                 Plaintiff,<br><br>                  - against -<br><br>DEPARTMENT OF EDUCATION,<br><br>                                 Defendant. | **OPINION AND ORDER**<br><br>19 Civ. 6963 (ER) |

Ramos, D.J.:

Arquelia Vega brings this action *pro se* against the Department of Education ("DOE").
Initially, Vega commenced the action against the DOE, Ester Quinones, former school principal,
and Alexandra Estrella, district superintendent.  On June 26, Vega filed an amended complaint
against only the DOE.  Vega is a former DOE teacher who alleges that school administrators
discriminated against her on the basis of her disabilities, failed to reasonably accommodate her
disabilities, and retaliated against her for filing a claim with the Equal Employment Opportunity
Commission ("EEOC").  Vega's claims are brought under Title VII of the Civil Rights Act of
1964 and the Americans with Disabilities Act of 1990, 29 U.S.C. §§ 12101 *et seq.* ("ADA").
The DOE now moves to dismiss Vega's Second Amended Complaint in its entirety.  For the
reasons set forth below, the motion to dismiss is GRANTED.

I.      BACKGROUND[1]

Vega is a licensed teacher in New York State.  Second Amend. Compl., Doc. 30 ¶ 8.  She suffers from obesity and cardiomegaly, which has limited her ability to walk long distances, climb stairs, and breathe.  *Id.* ¶ 12.  Because of these limitations, Vega utilizes a motorized scooter to conduct her everyday responsibilities.  *Id.* ¶ 13.

On February 4, 2019, Vega was knocked to the ground in the library of her assigned DOE school by passing teachers as she tried to get onto her motorized scooter, which caused her to hit her head and lose consciousness.  *Id.* ¶ 14.  As a result of the fall, she was diagnosed with a concussion, head injury, and memory loss as well as double vision and pain while walking.  *Id.* ¶¶ 14–15.  To qualify for workers' compensation, Vega submitted doctors' notes describing her injury and need for a leave of absence, and other required paperwork to the DOE.  *Id.* ¶ 18.  However, the DOE allegedly failed to submit her workers' compensation application, depriving her of the opportunity to qualify for a leave of absence.[2]  *Id.* ¶¶ 20–21, 27.

On February 19, 2019, Vega received notice of her termination from the DOE because of her tardiness, failure to submit an Individual Education Plan for a disabled student on time, use of illegible classroom materials, and previous problems with former principal, Ester Quinones. [3]

---

[1] The Court assumes the parties' familiarity with the facts in its March 30, 2020 Opinion dismissing a prior complaint she filed based on substantially the same allegations. *See Vega v. Dep't. of Educ.,* No. 18 Civ. 6221 (ER), 2020 WL 1505564, at *1 (S.D.N.Y. Mar. 30, 2020) [hereinafter *Vega I*].

[2] Vega's assertion in the instant case that she submitted her workers' compensation materials to the DOE is contradicted by her allegations in *Vega I* that she "had been trying to send medical documents via email to support her claim for a Line of Duty approved absence from work.  She was unable to upload the paperwork."  Amend. Compl., *Vega I*, No. 18 Civ. 6221 (ER) (S.D.N.Y. May 6, 2019), ECF No. 31.

[3] Vega does not provide any additional context surrounding the problems with the former principal in her Second Amended Complaint.  However, in *Vega I*, she alleged that Quinones told her that she did not want Vega to work at the school anymore and that she should look for a new job because her health problems were interfering with her ability to work.  Amend. Compl., *Vega I*, No. 18 Civ. 6221 (ER) (S.D.N.Y. May 6, 2019), ECF No. 31.  Vega also

*Id.* ¶ 22.  Vega submitted a response to the DOE on March 3, 2019.  *Id.* ¶ 23.  The DOE

officially terminated her employment on March 6, 2019.  *Id.* ¶ 24.

Vega alleges that her termination raises an inference of intentional discrimination on the

basis of her disability.  *Id.* ¶ 28.  Vega further alleges that because of her termination, she has lost

her healthcare coverage and is unable to recover from her injuries as quickly as she would have

if she had not been terminated.  *Id.* ¶ 25.  Vega continues to receive psychiatric treatment to

address the emotional trauma she experienced from been fired.  *Id.* ¶ 26.

Vega additionally states that she was also engaged in a prior lawsuit, *Vega I*, against

defendant alleging discrimination for defendant's failure to accommodate her disability.  *Id.* ¶ 11.

Vega further asserts that she was terminated because of previous encounters with Quinones.  *Id.*

¶ 22.

## II.    *VEGA I*  AND PROCEDURAL HISTORY

On July 9, 2018, Vega filed a complaint against the DOE and Principal Ester Quinones in

*Vega I*.  She amended that complaint on May 6, 2019, alleging:  (1) termination, (2) failure to

accommodate her disability, (3) disparate treatment from similarly situated employees, (4)

retaliation, and (5) harassment.  Specifically, Vega claimed that defendants discriminated against

her because of her physical ailments, failed to accommodate her disabilities, retaliated against

her for requesting accommodations, and subjected her to a hostile work environment.  *See*

*generally Vega I*,  Amend Compl.  She alleged that Quinones told her to quit teaching because

---

alleged that Quinones would restrict her from using the school elevator and subject her to disciplinary hearings to
harass her.  *Id.* ¶¶ 29–60.

her weight was getting in the way of her work.  Amend. Compl., *Vega I*, No. 18 Civ. 6221 (ER) (S.D.N.Y. May 6, 2019), ECF No. 31 ¶ 59.  Further, Vega referenced the same incident that forms the basis for the instant action, alleging that "on or about February 4, 2019, [she] had an accident in the school library, and fell and hit her head and [was] take[n] out of the school by ambulance.  She was unconscious and left school to recover for the next couple of weeks."  *Id.* ¶ 68.  As a result, Vega alleged  that she was discriminated against and retaliated against when she was terminated from her employment in March 2019.  *Id.* ¶ 32.  On August 23, 2019, the *Vega I* defendants filed a motion to dismiss the amended complaint.  On March 30, 2020, this Court granted defendants' motion in its entirety.  The Court found that Vega's state discrimination claims were barred by the election of remedies doctrine because she had previously raised her complaints with the New York State Division of Human Rights where they were dismissed for lack of probable cause.  *Vega I*, 2020 WL 1505564, at *5–6.  Other claims brought by Vega, occurring before July 9, 2015 under the ADA and Rehabilitation Act were barred by the applicable statutes of limitations.  *Id.* at *6.  Finally, the Court dismissed the remainder of Vega's claims for failure to allege sufficient facts giving rise to an inference of intentional discrimination, failure to accommodate, disparate treatment, retaliation or harassment on the basis of her disability.  *Id.*

On July 24, 2019, while *Vega I* was still pending, Vega commenced the instant action against the DOE, Quinones, and Estrella asserting claims of disability discrimination, hostile work environment and retaliation in connection with her employment and termination from DOE.  *See generally* Compl., Doc. 2.  In the first Complaint, Vega alleged, as she did in *Vega I*, that Quinones asked her to leave her teaching job because her physical ailments were preventing her from her job duties.  Doc. 2 at 3.  She alleged that she was terminated as a result of her

4

mental disabilities and in retaliation for reporting complaints against Quinones with the Equal

Employment Opportunity Commission ("EEOC").  *Id.*  Vega additionally alleged that she was

terminated from her employment as a result of the February 4, 2019.  *Id.*  Finally, Vega alleged

that defendants discriminated against her on the basis of race.  *Id.*  On May 29, 2020, defendants

moved to dismiss the complaint on the following grounds:  (1) the complaint was barred by the

doctrines of *res judicata*, and collateral estoppel; (2) most of the complaint is time-barred by the

applicable statutes of limitation; (3) § 1981 does not provide a private right of action against state

actors; (4) Vega's claims under the state discrimination laws are jurisdictionally barred by the

election or remedies doctrine; and (5) the complaint fails to state a claim of discrimination,

retaliation, and hostile work environment.  On June 26, in response to the motion to dismiss,

Vega filed an amended complaint against only the DOE, asserting claims of disability

discrimination and retaliation.  *See generally* Amend. Compl., Doc. 27.

On July 15, Vega filed an identical second amended complaint.  *See generally* Second

Amend. Compl., Doc. 30.  On August 10, the DOE moved to dismiss the Second Amended

Complaint.  Specifically, the DOE argues in its motion to dismiss that:  (1) Vega's arguments are

barred by the doctrine of *res judicata*; (2) to the extent that any allegations are not precluded,

Vega has failed to state a plausible claim of disability discrimination or retaliation; and (3) if

Vega were given the opportunity to amend the Complaint, any amendment would be futile.  In

Vega's memorandum in opposition to the motion to dismiss, she only addresses and defends her

discrimination claim on the grounds of the February 4th accident.  Mem. in Opp., Doc. 38 at 7–8.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint allege sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 1974 (2007).  But if a plaintiff has "not nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, the plausibility standard does not require the court to credit "legal conclusion[s] couched as . . . factual allegations[s]" or "naked assertions devoid of further factual enhancement." *Id.*  "The Court is required to accept as true the factual allegations contained in the Complaint." *Brunson v. Duffy*, 14 F. Supp. 3d 287, 291 (S.D.N.Y. 2014) (citing *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)).  A district court may consider the facts stated in the complaint, "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotations omitted).

A *pro se* plaintiff's complaint will be "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 6621 (SS), 2010 WL 2776835, at *5 (S.D.N.Y. Jul. 13, 2010) (stating that less stringent standards will be applied to briefs and opposition papers filed by *pro se* litigants).  Despite holding the *pro se* litigant to less stringent standards, the court still requires that he plead facts sufficient to "state a claim to relief that is plausible on its face." *Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014) (citing *Iqbal*, 556 U.S. at 678).  The court will construe the *pro se*

litigants' pleadings and opposition papers "liberally and interpret them 'to raise the strongest arguments that they suggest.'"  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  However, "[n]aked assertions of [ ] discrimination . . . without any specific [factual] allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [protected characteristic] [are] too conclusory to withstand a motion to dismiss."  *Sanders -Peay v. N.Y.C. Dep't of Educ.*, No. 14 Civ. 4534 (CBA)(MDG), 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014) (citing *Gaddy v. Waterfront Comm'n*, No. 13 Civ. 3322 (AT)(HBP), 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014)).

## IV.  DISCUSSION

### a.  Claim Preclusion

The DOE argues that Vega's claims are barred by the doctrine of *res judicata*, or claim preclusion.  Mem. in Support of Mot., Doc. 35 at 5.  Vega argues that the February 4, 2019 accident occurred after she filed the complaint in *Vega I* and thus could not have been raised there.  Because Vega could have raised her claims in her amended complaint in *Vega I*, and in fact did, the Court agrees with the DOE.

"The doctrine of *res judicata*, or claim preclusion, holds that a final judgement on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Marcotte v. City of Rochester*, 677 F. App'x 723, 725 (2d Cir. 2017) (citing *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F. 3d 275, 284–85 (2d Cir. 2000)) (internal citations omitted).  "Accordingly, a litigant may not bring successive lawsuits to recover what is essentially the same relief for harm arising out of the same or related facts, even

if the suits depend on alternative theories to establish entitlement to relief." *Sackets Harbor Leasing Co., LLC v. Vill. of Sackets Harbor*, 485 F. App'x 497, 499 (2d Cir. 2012) (internal quotations omitted).  The Second Circuit has held that *res judicata* does apply to *pro se* plaintiffs.  *Bey v. City of New York*, 454 F. App'x 1, 3 (2d Cir. 2011).

"The doctrine of res judicata precludes a party from asserting a claim in subsequent litigation if:  '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.' "  *Bey*, 454 F. App'x at 3 (quoting *Monahan*, 214 F.3d at 285).  A claim could have been raised previously "if it emerges from the same 'nucleus of operative facts.'"  *Malcom v. Bd. Of Educ. Of Honeoye Falls-Lima Cent. Sch. Dist.*, 506 F. App'x 65, 1 (2d Cir. 2012).  The Court will determine that two actions will arise out of the same nucleus of operative facts  when  "the underlying facts are related in time, space, origin, or motivation, . . . they form a convenient trial unit, and . . . their treatment as a unit conforms to the parties' expectations.'"  *Id.* (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000).

Vega argues that the claims she raises in this case, which were based on the DOE's alleged discrimination against her for the disabilities resulting from her February 4, 2019 fall, could not have been raised in *Vega I* because that complaint was filed before  February 4, 2019.  Vega's argument fails because she specifically pleaded the facts of the February 4, 2019 fall in the Amended Complaint in *Vega I*.  Vega's current claims are thus based on an accident arising from the same nucleus of operative facts as those alleged in *Vega I*.  Her claims are therefore barred by *res judicata*.  *See, e.g.*, *Malcom*, 506 F. App'x at 1 (holding that the *pro se* plaintiff was precluded from bringing claims against defendant school district and its employees because

the claims fell within the same nucleus of operative facts already plead in previous actions); *compare Rivera v. City of New York*, 594 F. App'x 2, 5 (2d Cir. 2014) (holding that *res judicata* did not apply when plaintiffs previous "actions were brought in November and December 1997 (with amended complaints filed in April 1998), *before* the plaintiffs were fired in December 1998").

       **b.**    **Vega Fails to State a Plausible Claim of Discrimination, Failure to Accommodate or Retaliation**

Even assuming Vega's claims were not barred by claim preclusion, she has failed to sufficiently plead a plausible claim of discrimination, failure to accommodate, or retaliation under Title VIII or the ADA.  The DOE does not now dispute that Vega was disabled throughout her employment at the DOE or that the DOE is subject to the ADA.[4] However, the Court again, as it did in *Vega I*, considers whether Vega has made a sufficient showing that, with reasonable accommodations, she could have performed the essential functions of her job as a teacher and whether the DOE failed to provide her with the appropriate accommodations.

*Intentional Discrimination*

Vega alleges that she has suffered intentional discrimination because of the DOE's "decision to terminate [her] employment."  Doc. 30 ¶ 28.  The DOE argues that Vega's allegations of intentional discrimination are conclusory and insufficient.

To the extent Vega alleges that her termination in March 2019 was an intentional act of disability discrimination, she has not alleged sufficient facts that give rise to such

---

[4] Defendants in their motion to dismiss the original complaint argued that Vega failed to plausibly plead that she was disabled within the meaning of the ADA.  Doc. 26 at 17.  However, DOE omitted this argument in its motion to dismiss the Second Amended Complaint.  Doc. 35. Therefore, the Court assumes that Vega is disabled.

an inference.  The DOE alleges that Vega was terminated for leaving the building late,

submitting a disabled student's paperwork late, using classroom materials with small text

and inter-personal problems with her former principal.  *Id.* ¶ 28.  Furthermore, Vega's

conclusory remark that her termination raises an inference of intentional discrimination is

devoid of factual support.  *Id.* ¶ 28; *see Williams v. City of New Rochelle*, No. 13 Civ.

3315 (NSR), 2017 WL 6335904, at *8 (S.D.N.Y. Dec. 7, 2017) (refusing to find an

intention to discriminate where plaintiff offers only conclusory statements).  Thus, Vega

has not sufficiently plead intentional disability discrimination.

*Failure to Accommodate*

"The ADA prohibits 'discrimination against a qualified individual on the basis of

disability in regard to [, *inter alia*,] . . . discharge of employees.'"  *McBride v. BIC Consumer*

*Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42. U.S.C. § 12112(a)).

Discrimination in violation of the ADA includes "not making reasonable accommodations to the

known physical and mental limitations of an otherwise qualified individual with a disability."[5]

*Id.* (quoting 42. U.S.C. § 12112(b)(5)(A)).  To establish a *prima facie* case of a failure to

accommodate claim under the ADA, the plaintiff must allege each of the following:

> (1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an
> employer covered by the statute had notice of his disability; (3) with reasonable
> accommodation, plaintiff could perform the essential functions of the job at issue;
> and (4) the employer has refused to make such accommodations.

*McBride*, 583 F.3d at 97 (internal quotation omitted).

Vega alleges that had the DOE submitted her workers compensation application,

she would have qualified for the leave of absence she needed to recover from the mental

---

[5] A "qualified individual" includes "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

and physical injuries she sustained from her fall.  Doc. 30 ¶ 27.  However, the DOE argues that this allegation directly conflicts with Vega's allegation that the DOE "never asked or scheduled [Vega] to return to work" following her alleged accident,  *Id.* ¶ 21, and allegations made in *Vega I* when Vega asserted that she was unsuccessful in uploading the necessary paperwork for leave of absence approval.  Doc. 35 at 16.  They further argue that even if they did receive her application for workers compensation and denied her request, they are not obligated to provide all accommodations that a disabled employee may request.  *Id.*  Finally, the DOE argues that Vega has otherwise failed to indicate what accommodation she requires and how any requested accommodation is related to her disabilities and ability to perform her job.  *Id.*

To the extent that Vega alleges that the DOE failed to accommodate her disability by denying workers compensation benefits, this claim fails.  Doc. 30 ¶ 27.  As alleged by the DOE, there is uncertainty surrounding whether or not Vega even correctly submitted the documentation necessary to receive workers compensation benefits.  *See supra.* Further, Vega does not plead facts that lead to an inference that workers compensation was required to accommodate her disability.  *See, e.g.*, *Desmond v. Yale-New Haven Hosp. Inc.*, 738 F. Supp. 2d 331, 351 (D. Conn. 2010) ("[A]n interpretation of 'reasonable accommodation' that would require a private employer to provide for all treatments that a disabled employee deems necessary to restore her capacity to perform essential job functions is an unwarranted extension of the duty to accommodate.").  In addition, to the extent that the DOE did deny her application for workers compensation, Vega has not shown that the DOE's actions were discriminatory.  "An employer is not required to provide every accommodation a disabled employee may request, as long as

11

the accommodation provided is reasonable." *See Krikelis v. Vassar Coll.*, 581 F. Supp.

2d 476, 486–87 (S.D.N.Y. 2008) (citing *Fink v. N.Y.C Dep't of Pers.*, 53 F.3d 565, 567

(2d Cir. 1995)).  Vega pleads no other accommodation that would have sufficed.

Accordingly, her claim of failure to accommodate is dismissed.

*Retaliation*

Vega alleges that she was terminated in March 2019 in retaliation for filing her

previous case, *Vega I*, in July 2018.  Doc. 30 ¶ 20.  To sufficiently plead a *prima facie*

case of retaliation under the ADA, a plaintiff must show: "(1) [she] was engaged in an

activity protected by [the applicable statute], (2) the employer was aware of that activity,

(3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal

connection between the protected activity and the adverse employment action."

*Palummo v. St. Vincent's Med. Ctr.*, 4 F. App'x 99, 102 (2d Cir. 2001).  A causal

connection can be established:  "(1) indirectly, by showing that the protected activity was

followed closely by discriminatory treatment, or through other circumstantial evidence such

as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly,

through evidence of retaliatory animus directed against the plaintiff by the defendant."

*Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (internal citation omitted).

"To show causation indirectly by means of temporal proximity, the temporal proximity

must be very close."  *Vega I*, 2020 WL 1505564, at *10 (internal quotations omitted); *see

also Galimore v. City Univ. of N.Y. Bronx Cmty. Coll.,* 641 F. Supp. 2d 269, 288

(S.D.N.Y. 2009).

As a primary matter, Vega has failed to refute DOE's arguments regarding the

retaliation claims.  Therefore, Vega is assumed to have abandoned her retaliation claim.

*See, e.g.*, *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (upholding inference of abandonment where plaintiff failed to refute all claims).

Even if Vega did refute the DOE's argument, the alleged act of retaliation occurred approximately nine months after the alleged protected activities.  This gap in time does not satisfy the temporal proximity requirement.  *See Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.").  Additionally, to the extent that Vega is alleging that she was fired in retaliation for filing this lawsuit in July 2019, that assertion is illogical because she was terminated prior to the commencement of this suit.  Thus, Vega has not met her burden of plausibly alleging retaliation based upon her disability**.**

### c.  Vega is Denied Leave the Amend

Rule 15 of the Federal Rules of Civil Procedure allow the court to "freely give leave" to replead "when justice so requires."  *Telemaque v. Marriott Int'l, Inc.*, No. 14 Civ. 6339 (ER), 2016 WL 406384, at *10 (S.D.N.Y. Feb. 2, 2016) (citing Fed. R. Civ. P. 15(a)(2)).  Although the Second Circuit has expressed a "strong preference for resolving disputes on the merits," *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005), the court still maintains broad discretion over motions to amend.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Again, Vega has failed to refute DOE's arguments regarding leave to amend. Therefore, Vega is assumed to have abandoned her leave to amend claim.  *See, e.g.*, *Camarda*, 673 F. App'x at 30.

13

Even if Vega did refute the argument, the DOE opposes leave to amend because it would be futile.  Doc. 35 at 18.  "Leave to amend should be denied as futile when the amended pleadings would not survive a motion to dismiss under Rule 12(b)(6)."  *Grimes-Jenkins v. Consol. Edison Co. of New York, Inc.*, No. 16 Civ. 4897 (AT) (JCF), 2017 WL 2258374, at *2 (S.D.N.Y. May 22, 2017) (internal citation omitted).  The DOE bears the burden of demonstrating that an amended complaint would be futile.  *See Allison v. Clos-ette Too, LLC*, No. 14 Civ. 1618, 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015).

The Court agrees with the DOE that the claims asserted by Vega cannot be amended, as they are already barred by claim preclusion.  *See, e.g., Rochester v. Fortune Soc'y*, No. 16 Civ. 9423 (PGG), 2018 WL 4574886, at *5 (S.D.N.Y. Sept. 4, 2018) (dismissing *pro se* plaintiff's complaint, without affording an opportunity to re-plead, where claims were "barred by *res judicata*");  *Son v. Greenland Produce & Grocery Inc.*, No. 11 Civ. 9533 (PGG), 2013 WL 12084500, at *6 (S.D.NY. Mar. 11, 2013) (denying leave to amend where all claims were barred by *res judicata*).  Leave to amend is therefore denied.

## V.        CONCLUSION

For the foregoing reasons, the DOE's motion to dismiss is GRANTED  and leave to amend is DENIED.  Furthermore, because Vega has failed to make a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of appeal.  *See Coppedge v.*

*United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of the Court is respectfully directed to terminate the motion, Docs. 23 and 32, and to close the case.

It is SO ORDERED.

Dated:   November 16, 2020
         New York, New York

_____
EDGARDO RAMOS, U.S. D.J.